Clara A. **COFFMAN,** Appellant,

v.

The **KANSAS CITY STOCK YARDS COMPANY OF MAINE,** Respondent.

No. KCD 27326.

Missouri Court of Appeals, Kansas City District.

Aug. 2, 1976.

Rehearing Denied Aug. 30, 1976.

Michael J. Albano, Independence, for appellant.

Joe W. Coleman, Leonard A. O'Neal, Kansas City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Clara A. Coffman sued The Kansas City Stock Yards Company of Maine for $75,000 damages for personal injuries sustained by her while employed by the Stock Yards Company. A jury returned a verdict for plaintiff for $15,000. The trial court sustained defendant's motion to set aside the verdict and enter judgment for defendant. Plaintiff appealed from the judgment so entered.

The Stock Yards Company was the owner and manager of the nine-floor Livestock Exchange Building located in Kansas City, Missouri. In November, 1969, Ms. Coffman was employed by Stock Yards as a night janitress at the Exchange Building. Sometime prior to September 14, 1970, she was given the job of night mop man.

On September 14, 1970, Ms. Coffman, then 54 years of age, came to work at around 4:30 to 5:00 P.M. She entered the lobby of the building and took one of a bank of three automatic elevators to the fifth floor of the building where she prepared her mop and bucket and placed it in front of one of a bank of three manually operated elevators. She then took an automatic elevator and returned to the first floor. She planned, in accordance with her usual practice, to open the door to one of the manually operated elevators, take that elevator back to the fifth floor, get her bucket and mop, and then go to the various floors of the building where she performed her work.

Only employees of Stock Yards had access to the manually operated elevators. At the first and ninth floors the exterior doors of the elevator shaft could be opened by inserting a lunar key in a keyhole in the

door and pushing upward to release the lock. The door could then be opened, regardless of the location of the elevator car. The doors could not be opened from the exterior on the second to eighth floors, there being no keyholes in the doors on those floors. The manually operated elevators had no devices showing the location of the elevator car.

When Ms. Coffman reached the first floor, she got the elevator door key from a wall safe around the corner from the elevators. The keyhole was in the upper part of the door and Ms. Coffman sometimes had difficulty in pushing the key up to release the lock. On this occasion, she asked an employee of a tenant to assist her. Whether or not he did anything to assist was not clear. He said he did nothing. She said that he pushed up on the key, releasing the lock and the door opened enough for her to get her hand in and push the door open, preparatory to entering the elevator car and turning on the light. Ms. Coffman thanked the man and stepped through the door. However, the elevator car was not at that level and she fell to the bottom of the elevator shaft, some six feet below the floor level. The nature and extent of her injuries are not here important.

In her petition seeking damages for her injuries, plaintiff alleged that defendant was negligent in failing to provide a safe place for her to work in several particulars. At the trial her claim was submitted on the single specification that defendant failed to provide a reasonably safe place to work "by failing to provide a device to prevent the opening of the door to the elevator shaft when the elevator was at a different floor location * * *."

In sustaining defendant's motion for judgment following the verdict in favor of plaintiff, the trial court in its memorandum stated:

"There was no evidence as to whether any device existed of the kind hypothesized in plaintiff's verdict director. Nor was there any evidence as to its availability, cost or usage."

On this appeal, appellant has advanced several general propositions, some of which are uncontroverted. It is conceded that respondent has elected to reject the Missouri Workmen's Compensation Law. Such rejection does deprive the employer in an action such as this of certain common law defenses, as specified in § 287.080, RSMo 1969. However, respondent has not attempted to assert any of those defenses. Appellant's burden of proving negligence on the part of the employer is not affected by respondent's rejection of the Workmen's Compensation Law.

Respondent, from an abundance of caution and from what it perceives as a lack of certainty about appellant's contentions on appeal, has briefed at length not only the question of the grounds of negligence submitted at trial, but also all those alleged in plaintiff's third amended petition upon which the cause was tried. The claimed deficiencies in appellant's brief have been made the basis of a motion of respondent to dismiss the appeal for failure to comply with Rule 84.04. Inasmuch as appellant has conceded that she has waived the grounds of negligence asserted in her petition but not submitted in the trial court and that the single question on this appeal is the correctness of the trial court's ruling on the charge of negligence submitted, the issue on appeal is clearly delineated and appellant's brief adequately presents it. Therefore, the motion to dismiss the appeal is overruled.

Dispositive of this appeal is the fact that appellant has failed to demonstrate that the trial court erred in its conclusion that evidence was wholly lacking as to the existence, availability, cost or usage of a device to prevent the opening of the elevator shaft door when the elevator car was on a different floor. Appellant argues that such evidence is to be found in the testimony of Mr. Dillingham, president of respondent, called as a witness by appellant at the trial. Her argument on this score is as follows:

"The testimony of Mr. Dillingham, the respondent's President, is quite clear: First, when asked about a particular automatic

elevator, he replied 'The door came open. It meant that the elevator was there, on an automatic elevator, so I got on.' * * *; second, when asked about the elevator in the Livestock Exchange Building, he gave the following responses, regarding the three automatic passenger elevators:

'Q. And the door opens automatically, when the elevator is at that floor; isn't that right?

'A. Yes, sir.

'Q. In fact, you don't allow your tenants, or visitors to your building, other than your help, to use anything but the three automatic elevators, isn't that right?

'A. Well, when the automatics were put in, and with the decline in volume of traffic on the elevators in our building, we had no need for the others. * * *

'Q. Do you allow your tenants or the people coming into the building to use anything other than the three automatic elevators, Mr. Dillingham?

'A. I believe I testified that they were not in use, and the general public did not generally use them.

'Q. All right. So you don't subject the general public to opening the door with a lunar key, do you sir?

'A. The general public could not have access to the key through which they could open the door.' "

Appellant also points to the following finding of the trial court in its memorandum:

"The doors to the automatics could not be entered unless the car was there. The doors to the manuals all locked but could be entered by the use of a lunar key on the first and ninth floors."

The fallacy in appellant's argument is that the evidence upon which she relies did not relate to the operation of an elevator in the circumstances of appellant's injury. All Mr. Dillingham's testimony showed was that, on the automatic elevators used by the public, when the elevators were powered up and in use, pushing the control button would cause the elevator to stop and the door to open. His testimony did not show that, even on the automatic elevators, which on the first floor of the building had a means of opening from the exterior the door to the shaft by use of a lunar key, such device would operate only when the elevator car was also at the first floor. The fact that the door did open automatically when the car was present and the control button pushed does not show that the door would not have opened. unless the car was there, had the lunar key device been used to open the door. The trial court's finding in this regard cannot bolster appellant's position because such finding simply was not based upon the evidence. The trial court did correctly find a complete lack of evidence to support the theory of negligence submitted and its judgment must be affirmed.

■ Appellant has advanced the further contention that the trial court erred because its memorandum showed that it considered respondent's motion which was sustained a "motion for a judgment n. o. v.," a motion abolished by Rule 78.05. The trial court's memorandum does refer to respondent's motion in such language. There is no need to dwell on the recent history of motions for judgment notwithstanding the verdict, now recognized by Rule 72.01(b). This case was tried in 1974, at which time Rule 78.05, as then in effect, did abolish such motion. New Rule 72.01(b) had been promulgated, although it had not become effective at the time of the trial court's ruling. In any event, however, Rule 78.05, then in effect, authorized the motion filed by respondent and the trial court's nomenclature did not render its action on the motion a nullity.

Judgment affirmed.